IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL NO. 13-1403

UNITED STATES OF AMERICA,
Appellee

v.

PEDRO HERNANDEZ-UBIERA
Appellant

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

(Honorable Francisco A. Besosa,
United States District Judge)

Appellant Pedro Hernandez-Ubiera's Pro Se brief

Pedro Hernandez-Ubiera, Pro Se
Reg. No. 39420-069
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, Massachusetts 01432

2013 OCT 17 P 2: 27

# TABLE OF CONTENTS

Table of Authorities....................................................ii,iii

Opening Statement...........................................................i

Statement of the Facts......................................................1

Statement of the Case.......................................................2

Issues Presented and Arguments...........................................3-18

I. Drug quantity is an element of the offense charged in 21 U.S.C. 841 which
must be established by proof beyond a reasonable doubt.......................3

II. Guilty plea was un-intelligent..........................................9

Rule 11 violations......................................................12-18

Rule 11 (b)(1)(C) Violation................................................13

Rule 11 (b)(3) Violation...................................................15

Rule 11 (b)(1)(H) Violation................................................16

Conclusion.................................................................19

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL NO. 13-1403
_____

UNITED STATES OF AMERICA,
Appellee

v.

PEDRO HERNANDEZ-UBIERA
Appellant
_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

(Honorable Francisco A. Besosa,
United States District Judge)
_____

Appellant, Pedro Hernandez-Ubiera, submits his Pro Se appellate brief
on time, as ordered by This Honorable Court in its Anders Briefing Notice is-
sued September 16, 2013 on October 15, 2013.

"The Constitutional requirement of substantial equality and fair proce-
ss can only be obtained where counsel acts in the role of an active advocate
in behalf of his client as opposed to that of amicus curiae." Anders v. Cali-
fornia, 386 US 738, (1967) at 744.

i

## TABLE OF AUTHORITIES

CASES

Alleyne v. United States, 133 S.Ct. 2151, 186 L.Ed. 2d 314 (2013)...8,13,14,15

Almendarez-Torres v. United States, 523 US 24, (1998)........................4

Anders v. California, 386 US 738, (1967)..................................1,19

Apprendi v. New Jersey, 530 US 466, (2000)............................3,4,5,7

Blakely v. Washington, 542 US 296, (2004).....................................7

Bousley v. United States, 523 US 614, (1998).................................9

Castillo v. United States, 530 US 120, (2000)...............................4

Cunningham v. California, 549 US 270, (2007)................................7

Harris v. United States, 536 US 545, (2002)...........................4,5,6,8

Jones v. United States, 526 US 227, (1999)..................................4

McCarthy v. United States, 394 US 459, (1969)..............................15

McMillan v. Pennsylvania, 477 US 79, (1986)...............................4,8

United States v. Arias, 409 F. Supp. 2d 281, 294-298 (S.D.N.Y. 2005).........7

United States v. Booker, 543 US 220, (2005).................................7

United States v. Cordoba-Murgas, 422 F.3d 65, (2nd Cir. 2005)...............6

United States v. Cotal-Crespo, 47 F.3d 1, 4-6, (1st Cir. 1995)..............12

United States v. Dominguez-Benitez, 542 US 74, 83 (2004)...................18

United States v. Ferguson, 60 F.3d 1, 2, (1st Cir. 1995)...................12

United States v. Gonzalez, 420 F.3d 111, (2d Cir. 2005).....................5

United States v. Goodine, 326 F.3d 26, (1st Cir. 2003)................3,4,5,9

United States v. Granham, 317 F.3d 262, (D.C. Cir. 2003)....................6

United States v. Hernandez-Wilson, 186 F.3d 1, 5, (1st Cir. 1999)...........12

United States v. Martinez, 277 F.3d 517, (4th Cir. 2002).....................6

United States v. O'Brien, 130 S.Ct. 2169, 176 L.Ed. 2d 976, (2010).........3,5

United States v. Rivera-Maldonado, 560 F.3d 16, 19, (1st Cir. 2009)........12

United States v. Velasco-Heredia, 319 F.3d 1080, (9th Cir. 2003).............6

United States v. Vonn, 535 US 55, 59, (2002)................................12

## RULES AND STATUTES

1. United States Code and constitutional Provisions:

18 U.S.C. § 111............................................................8

18 U.S.C. § 2119...........................................................7

18 U.S.C. § 2252..........................................................18

18 U.S.C. § 3553(a).......................................................13

18 U.S.C. § 924(C).........................................................3,6

21 U.S.C. § 841...........................................2,3,4,6,7,8,15,16

21 U.S.C. § 841 (b)(1)(A).........................................4,9,14,15,16

21 U.S.C. § 841 (b)(1)(B)..................................................4

21 U.S.C. § 841 (b)(1)(C)..................................................3,13

2. Federal Rules Of Criminal Procedure:

Fed. R. Crim. P. 11...................................................12,15,18

## STATEMENT OF THE FACTS

The only available information to Appellant as to the facts are those narrated during the COP hearing. Appellant refuses to adapt the facts as asserted by counsel in her brief pursuant to Anders v. California, 386 US 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967). Therefore, Appellant will adopt the facts as narrated in the COP hearing.

Beginning in April of 2012, the Defendant Benigno Hernandez Clander began having telephone communications with a Home Land Security Investigations (HSI) undercover agent for the purpose of negotiating the purchase of cocaine.

Hernandez Clander agreed to receive 100 kgs of cocaine at a value of $19,000 per kg. and further agreed to provide the undercover agent with a down payment of $170,000 upon the receipt of the narcotics, with the balance to be paid at a later date.

On May 3, 2012, Hernandez Clander and the undercover agent agreed to meet in order to complete the narcotics transaction.

Later that day, the undercover agent picked up Hernandez Clander, and traveled to the parking lot of COSTCO in Carolina, Puerto Rico, where the transaction was to be completed by way of a vehicle exchange.

In the parking lot of said location waited a second HSI undercover agent in a vehicle loaded with 100 kgs of sham cocaine.

Upon inspection of the sham cocaine by Hernandez Clander, Defendant Francisco Mercedes showed the second undercover agent the $170,000 that he had brought in a third vehicle as the agreed to down payment.

Appellant, who was also at the scene, walked back toward the second undercover vehicle where the 100 kgs of sham cocaine were located. At that time, HSI agents intervened and all three defendants were placed under arrest.

1

## STATEMENT OF THE CASE

On May 4, 2012, a criminal complaint and its accompanying affidavit was filed against the Appellant and two other individuals (DE 1) and the initial appearance was held. (DE 8) The Appellant was ordered temporarily detained. (DE 11)

On May 15, 2012, a preliminary hearing was held, in which the court found probable cause.

On May 31, 2012, a Grand Jury rendered a 2 count indictment against Appellant and two codefendants, charging violations of 21 U.S.C. §§ 841(a)(1) and 846. (DE 42)

On June 15, 2012, the arraignment was held (DE 53) and on June 26, 2012, the lower court issued a scheduling order. (DE 54)

On July 13, 2012, a status conference was held, in which the COP deadline and trial were set. (DE 62)

On August 1, 2012, the United States filed its designation of evidence and proposed jury instructions. (DE 64, 65, 66)

On September 10, 2012, the Appellant informed his intention to enter a straight plea. (DE 113) He later filed the waiver of right to trial and consent to appear before a U.S. Magistrate judge and pled guilty to both counts of the pending indictment pursuant to a straight plea. (DE 116, 119)

On January 9, 2013, an amended PSI report was filed (DE 148,152 & 155)

On February 27, 2013 Appellant was sentenced to 151mo. imprisonment on and five years super vised release to be served concurrently with each other and a forfeiture in the amount of $170,364. (DE 178)

Notice of appeal was filed on March 8, 2013 and o September 16, 2013, this Honorable Court issued Appellant an Anders Briefing Notice.

2

## ISSUES PRESENTED AND ARGUMENTS

I. DRUG QUANTITY IS AN ELEMENT OF THE OFFENSE CHARGED IN 21 U.S.C. 841 WHICH
MUST BE ESTABLISHED BY PROOF BEYOND A REASONABLE DOUBT.

Appellant objected to the drug quantity determination at the plea change
hearing. Because he admitted to no quantity or an unquantified amount under
18 U.S.C. 841 (b)(1)(c), the principles of Apprendi v. New Jersey, 530 US 466,
(2000) precluded application of the other subsections of 841 (b) which contain
not only mandatory minimum penalties for greater quantities, but also greater
maximum penalties. He renewed that objection and in fact, contested the drug
quantity determination at sentencing.

For the reasons set forth below, Appellant seeks review and reconsideration
en banc of the definition of drug quantity as a sentencing factor, as esta-
blished in this Honorable Court's decision in United States v. Goodine,
326 F.3d 26, (1st Cir. 2003) which appellant recognizes forecloses his
argument.

In United States v. O'Brien, 130 S.Ct. 2169, 176 L.Ed. 2d 979, (2010)(fire-
arm type in machine gun provision is element of 18 U.S.C. 924(C)) the court
reiterated that "Elements of a crime must be charged in an indictment and
proved to a jury beyond a reasonable doubt" while "⌊s⌋entencing factors... can
be proved to a judge at sentencing by a preponderance of the evidence." More-
over "⌊i⌋t is unconstitutional for a legislature to remove from the jury the
assesments of facts that increase the prescribed range of penalties to which a
criminal defendant is exposed."

3

In Goodine, the jury's verdict of possession with intent to distribute 5-50 grams of crack cocaine placed the offense within the parameters of the mandatory minimum of 21 U.S.C. 841 (b)(1)(b), but the court determined that the defendant was responsible for a larger quantity, triggering the mandatory minimum of 841 (b)(1)(a). Starting with the premises that "⌊t⌋he government must prove every element of a crime beyond a reasonable doubt" but "mere sentencing factors do not require such proof", this court evaluated § 841 to "determine whether drug quantity is an element of the offenses that must be proved beyond a reasonable doubt, or merely a sentencing factor that may be determined by the judge by a preponderance of the evidence" (326 F.3d at 28). After noting that " ⌊t⌋he distinction between 'elements' and 'sentencing factors' can be elusive" and recognizing a circuit split on the classification of drug quantity (Id.), this Honorable Court applied the analysis it derrived from Mcmillan v. Pennsylvania, 477 US 79, (1986); Almendarez-Torres v. United States, 523 US 24, (1998); Jones v. United States, 526 US 227, (1999); Castillo v. United States, 530 US 120, (2000); and Harris v. United States, 536 US 545, (2002).

Based on its analysis of: 1) statutory structure (subsection (a) identifies a crime and subsection (b) outlines different penalties); 2) "scarce" legislative history; 3) the classification of quantity as "a classic sentencing factor"; 4) the fact that under Apprendi the jury determined the maximum sentence; and 5) its view of quantity as going to "how the offense is conducted, rather than the result of the crime" (326 F.3d at 31-32), the court concluded that drug quantity was a sentencing factor to be determined by a preponderance of the evidence  rather than an element.

4

At the same time, this Honorable Court recognized that Apprendi did require jury findings as to quantity in order to impose a sentence above the maximum available for a conviction with no quantity allegation - the default statutory maximum (Id., at 32-33).

While this court! described drug quantity as a "classic sentencing factor", citing to the sentencing guidelines (Goodine, supra, 326 F.3d at 32), Booker held that under the mandatory sentencing guidelines enforced at the time Goodine was decided, facts that would change a guideline range, such as drug quantity, were not factors to be determined by a judge by a preponderance of the evidence, but were subject to the Fifth and Sixth Amendment requirements of being charged in an indictment, and proved beyond a reasonable doubt in a jury trial. In United States v. O'Brien, 130 S.Ct. at 2176, the court stated that, as differentiated from characteristics of the offender, "characteristics of the offense itself are traditionally treated as elements,..." Drug quantity is a characteristic of the offense, not the offender. Nor did the Goodine panel address the import of the fact that differences in quantity changed the applicable statutory sentencing range, unlike the statute addressed in Harris, where the fact at issue changed only the minimum sentence.

In United States v. Gonzalez, 420 F.3d 111, (2d Cir. 2005), the court, in holding that the mandatory minimum sentences set out in subsections of § 841 (b) were not mandatory unless a jury found, or a defendant admitted, the quantity necessary to invoke those provisions (Id., at 115-116), analyzed the structure of the statute and the impact of Apprendi v. New Jersey, 530 US 466, (2000) and its progeny.

5

Because each lettered subsection in the statute operates independently (changing the range of the penalty dependent on quantity) quantity is an element of the offense defined in each subsection (Id., at 120-122).

Unlike the statutory provisions addressed in Harris (upholding the imposition of an enhanced mandatory minimum sentence under 18 U.S.C. § 924(C) for brandishing a firearm based on judicial fact finding by a preponderance of the evidence), where particular facts raised only the minimum sentence, drug quantity under 21 U.S.C. § 841 establishes both a statutory maximum and a mandatory minimum, "thereby increasing defendant's authorized sentencing range above what it would have been if he had been convicted of an identical unquantified drug crime."(Id., at 126). Thus, drug quantity is unlike the brandishing of a firearm addressed in Harris in that drug quantity has been held to be an element in 21 U.S.C. § 841 for purposes of determining the statutory maximum while brandishing has not been deemed an element of 18 U.S.C. § 924(C) for any purpose. The court also noted that the Fourth (United States v. Martinez, 277 F.3d 517 (4th Cir. 2002)), Ninth (United States v. Velasco-Heredia, 319 F.3d 1080 (9th Cir. 2003)) and District of Columbia (United States v. Granham, 317 F.3d 262 (D.C. Cir. 2003)) Circuits have concluded that drug quantity must be found by the jury by proof beyond a reasonable doubt (Id at 130-131).

In United States v. Cordoba-Murgos, 422 F.3d 65, (2nd Cir. 2005), the court reiterated that quantity "is an element of any crime charged under 21 U.S.C. § 841...(Id., at 69) and held that even though defendant had admitted to a specific quantity permitting imposition of a sentence higher than that authorized as the maximum for an indeterminate quantity of drugs, the failure to allege

6

quantity in the indictment precluded imposition of such a sentence. See also, United States v. Arias, 409 F. Supp. 2d 281, 294-298 (S.D.N.Y. 2005), discusing statutory structure and legislative intent of 21 U.S.C. § 841 (b)(1) and agreeing that drug quantity and type are elements of offenses to be proved to a jury beyond a reasonable doubt or admitted by the defendant.

Appellant suggests that Blakely v Washington, 542 US 296, (2004); United States v. Booker, 543 US 220, (2005); and Cunningham v. California, 549 US 270, (2007) also support the conclusion that drug quantity is an element of an offense rather than a sentencing factor. In those cases the court did not only examine individual sentences  imposed to determine whether they complied with Apprendi, but invalidated the guidelines schemes at issue because they permitted judicial fact finding that would increase a potential sentence above the maximum authorized by a jury verdict. Thus, it is the potential sentence that is relevant, not simply the sentence actually imposed. Even where not used to invoke a mandatory minimum sentence, drug quantity is an element of the offense which must be established by proof beyond a reasonable doubt before it is employed for sentencing purposes.

Jones v. United States, 526 US 227, (1998) also supports classifying drug quantity as an element of the offense. There, the court evaluated the impact of the fact of bodily injury in construing the carjacking statute, 18 U.S.C. § 2119, a statute with a structure similar to that of 21 U.S.C. § 841. The carjacking statute begins with a definition of carjacking, followed subsections setting different levels of punishment linked to various degrees of bodily injury. The court held that the statute defined three separate carjacking

7

offenses. Like the carjacking statute, 21 U.S.C. § 841 defines certain unlawful conduct and follows with subsections setting different levels of punishment linked to drug type, drug quantity, death or serious bodily injury resulting. This linkage suggests that bodily injury, drug quantity and drug type are elemnts of the offenses defined in 21 U.S.C. § 841. See also, United States v. Hathaway, 318 F.3d 1001 (10th Cir. 2003)(reconsidering prior construction of Federal assault statute (18 U.S.C. § 111) in light of Jones and concluding that statute defined separate offenses rather than single offense with sentencing factors).

Alleyne v. United States, 133 S.Ct. 2151, 186 L.Ed. 2d 314, (2013), further supports the conclusion that drug quantity is an element of the offense. Appellant believes it actually renders present discussion moot. There, the court announced a new rule by defining what a "crime" is in the context of the Sixth Amendment. Acknowledging that the historic "relationship between crime and punishment" compels that any fact which by law increases the range of punishment to which a criminal defendant is exposed "is an element of a new offense" a "distinct and aggravated crime." These elements are entitled the full panoply of Constitutional protection under the Sixth Amendment "in conjunction with Due Process." This reasoning leads inexorably to the conclusion that the addition of a drug quantity element to a § 841 offense result⌊s⌋ in a different criminal charge from the same offense pleaded without regard to quantity. Alleyne overruled McMillan, Harris, and severely crippled Almendarez-Torres, the Court, seriously questioning its continued vitality. Because McMillan and Harris proved to be the foundation upon which Goodine was built,

8

this Honorable Court must decide if it survived, and if it did manage to survive, this Honorable Court must decide to disconnect United States v. Goodine, from life support.

For the above reasons, this Honorable Court should reconsider Goodine's holding that drug quantity is not an element of a drug offense. Accordingly, the sentence should be vacated and the case remanded for that consideration.

## II. GUILTY PLEA WAS UNITELLIGENT

If this Honorable Court were to hold that drug quantity is an element of the offense of conviction (as presented in issue number one) then it must conclude that Appellant was misinformed as to the elements of a § 841 (b)(1)(A) offense. The record clearly reveals that neither Appellant, his counsel, government counsel, nor the Court, correctly understood the essential elements of the crime with which he was charged. Upon these facts Appellant's plea is invalid under the Constitution. See Bousley v. United States, 523 US 614, (1998). At the COP hearing, the following colloquy ensued which demonstrates everyone's confusion as to the element of the offense:

Mr. Boucher Martinez: Your Honor, as to Defendant no. 2 Pedro Hernandez Ubiera at this time, we are reserving the right for purposes of sentencing only as to the amount of the kilos that were in the transaction, the alleged transaction. ... (off mic) ... we have an objection.

The Court: Mr. Gaztam --

Mr. Boucher Martinez: So, just noting for the record that we have an objection as to the amount, for purposes of sentencing only.

The Court: Mr. Gaztambide?

9

Mr. Gaztambide: Your Honor, we are in the same position. But the United States only has to prove it's a detectable amount.

The Court: Okay.

Mr. Gaztambide: In any case, --

The Court: So, Mr. Boucher and Mr. Gaztambide want to reserve for the record the right to argue the amount of narcotics involved at the time of sentencing?

Mr. Boucher Martinez: That is it, yes, Your Honor.

Mr. Albino Gonzalez: I'm -- Your Honor?

Ms. Longo Quinones (Gov. Counsel): No Objection, Your Honor.

The Court: Excuse me?

Ms. Longo Quinones: No objection, Your Honor.

Mr. Boucher Martinez: And, as the Prosecutor stated, my client appeared at COSTCO in a car where the $170,000 were found, and -- and he accepts that that is correct.

Mr. Albino Gonzalez: Your Honor?

The Court: Yes?

Mr. Albino Gonzalez: If I may? I will join Brother Counsel's objection as well

The Court: Okay. It's more -- it's not an objection --

Mr. Albino Gonzalez: Yeah, it's not -- it's not--

The Court: -- really, it's a reservation.

Mr. Albino Gonzalez: -- an objection. It's -- exactly, Your Honor.

The Court: Because at this time, --

Mr. Boucher Martinez: Yeah.

The Court: -- the defendants have to accept --

Mr. Boucher Martinez: Yes.

The Court: -- responsibility, (a), for the elements of the offense as charged, and, (b), for the accuracy and truthfulness of the facts. If you're going to discuss the amounts, it really goes to the actual exposure at the time of sentencing.

Mr. Albino Gonzalez: Exactly, --

Mr. Boucher Martinez: That's right.

Mr. Albino Gonzalez: Your Honor.

The Court: Are we all in agreement?

Mr. Albino Gonzalez: Yes, Your Honor. And -- and our --

Ms. Longo Quinones: That's correct, Your Honor.

Mr. Albino Gonzalez: -- and the Defendants are accepting the facts.

The Court: Okay. So, we don't have a problem.

Mr. Boucher Martinez: That's correct, Your Honor.

The Court: For now. Okay. Now, addressing the 3 Defendants.

By the Court: We have discussed the charges, the elements of the offense, and the statement of facts, or the version of the fact that the government is presenting, and that is what the government would have tried to prove if you three had decided to go to trial. I have explained to you the consequences of entering a straight plea. And, at this time, I need to ask each one of you: how do you plead to the two-count indictment pending against you?

Defendant 1: Gulty.

Defendant 2: Guilty.

Defendant 3: Guilty.

11

The Court: Okay, I find that the Defendants are fully competent and capable of entering an informed plea, that the Defendants are aware of the nature of the charges and the consequences of entering in to a straight plea, that this plea is a knowing and voluntary plea supported by an independent basis containing each of the essential elements of the offenses as charged.

(COP Trans. 51-54)

Accordingly, the conviction should be vacated and Appellant be allowed to plead anew.

RULE 11 VIOLATIONS

Because a guilty plea is a shortcut around the fact-finding process, reviewing Courts have been willing to intervene when an error in the guilty plea process arguably affects a "core concern" of Rule 11. See United States v. Hernandez-Wilson, 186 F.3d 1, 5 (1st Cir. 1999). This includes ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial. See United States v. Ferguson, 60 F.3d 1, 2 (1st Cir. 1995); United States v. Cotal-Crespo, 47 F.3d 1, 4-6 (1st Cir. 1995), Cert. Denied, 516 US 827 (1995).

Appellant's underlying Rule 11 claims are reviewed for plain error, because Appellant failed to object to the errors or move to withdraw his plea in the District Court. See. United States v. Vonn, 535 US 55, 59 (2002); United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st. Cir. 2009). In order to establish plain error, a defendant must show that: (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights and (4) the error "seriously affect⌊ed⌋ the fairness, integrity or public re-

12

putation of judicial proceedings" <u>Rivera-Maldonado</u>, 560 F.3d at 19 (quoting <u>Vonn</u>, 535 US at 62-63)(alteration in original)(internal quotation marks omitted).

A) RULE 11 (b)(1)(C) VIOLATION

Rule 11(b)(1)(C) requires a Court to ensure that a Defendant understands his "right to a jury trial" on the charge to which he is pleading guilty.

Not surprisingly, given that Appellant's guilty plea pre-dated <u>Alleyne</u>, the District Court did not inform him of his right to have the pleaded statutory drug quantity proved to a jury. Not only that, but the Court failed to even mention drug quantity as a sentencing factor, or one of the sentencing factors to be considered in establishing the sentence Appellant was to receive. The Court: Alright. While the sentencing guidelines are advisory, the sentencing factors must be considered by the judge at the time of sentencing. And those factors are found at 18 United States Code, Section 3553(a). And they are: the seriousness of the offense, the need for deterrence of criminal conduct, the need to protect the public from further crimes, the need to provide defendants with educational, vocational, medical training, or medical care, the need to provide restitution to any victims. And the Court may also take into account any special characteristics on the part of a defendant. Are you aware that those are the factors to be considered by the presiding judge at the time of sentencing? (COP Trans. 43-44)

Instead, the Magistrate Judge, upon objection to the drug quantity by the Appellant, advised him that drug quantity amounts go to the "actual exposure at time of sentencing" (COP Trans. at 52).

13

For the reasons already discussed, this Honorable Court should conclude that after <u>Alleyne</u>, this was an incorrect statement of the law. Thus, in this case, the Rule 11 violation deprived Appellant of information that was significant to his decision-making as to whether to plead guilty. Nor is there any indication that the presumptively significant information regarding the operation of a mandatory minimum sentence was in fact insignificant in the particular circumstances of this case. The record plainly demonstrates that the only fact Appellant wished to contest with respect to the charged conspiracy was drug quantity precisely because of its potential impact on any term of incarceration, both in the terms of the statutory minimum and the sentencing guidelines. If the § 841 (b)(1)(A) drug quantity was an issue to be resolved by the judge, as Appellant was mistakenly informed, there would be no reason for him to proceed to trial; better to plead guilty and concentrate his efforts on disputing quantity at the sentencing hearing. But if Appellant had understood that the issue was one that the government would have to prove to a jury at trial, he would seriously consider not waiving that right. Once the matter was brought to the sentencing hearing, the District Court found that the evidence supported a finding of drug quantity sufficient to trigger § 841 (b)(1)(A) by a preponderance, but not necessarily beyond a reasonable doubt, demonstrating that Appellant's reluctance to plead to any such amount was strategically sound. Thus, after <u>Alleyne</u> the District Court could not conclude that Appellant knowingly and voluntarily pled guilty to a drug offense under § 841 (b)(1)(A) based on misinformation that a judicial finding as to drug quantity, rather than a jury verdict or plea, would mandate imposition of that

14

statute's minimum ten year sentence. Accordingly, conviction should be vacated
and Appellant be entitled to plead anew.

B) RULE 11(b)(3) VIOLATION

As a precondition to entering a judgment, a court must "determine that
there is a factual basis for the plea." Fed. R. Crim. P. 11 (b)(3). See Mc-
Carthy v. United States, 394 US 459, (1969)("Rule 11 requires the judge to
satisfy himself that there is a factual basis for the plea" Id. at US 467. At
the sentencing hearing, the Court recited the statutory violations that would
be entered in judgment as to his conviction on the indictment:

The Court: On September 10, 2012, Defendant, Pedro Manuel Hernandez-Ubiera
pled guilty to both counts of the indictment in criminal case no. 12-433,
which charged violations of Title 21, United States Code section 841 (a)(1)
and 846, and Title 18, United States Code section 2, conspiracy to attempt to
possess with intent to distribute 5 kilograms or more of cocaine, a class A
felony. Sent. Trans. at 22. As explained throughout this brief, and after
Alleyne, in such a situation § 841 (a) no longer presents the entire offense;
one element of the crime (drug quantity) is to be found in § 841 (b)⌊(1)(A)⌋
instead. For the reasons discussed this Honorable Court should conclude that
a drug conspiracy pleaded by reference to § 841 (b)(1)(A) is a different, of-
fense from an unquantified drug conspiracy, and that Appellant's failure to
admit - indeed, his explicit challenge to the statutorily prescribed quantity
meant that his plea did not provide the Court with an adequate factual basis
to enter judgment against him on the charged crime. Therefore, this violation
requires that conviction be vacated and Appellant be entitled to plead anew.

15

C) RULE 11 (b)(1)(H) VIOLATION

Rule 11 requires that the District Court inform the defendant during the plea colloquy of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11 (b)(1)(H). Here, the District Court failed, at the change-of-plea hearing to inform Appellant of the maximum supervised release penalty for both, count one and two as to the conspiracy with intent to distribute and the attempt to possess with the intent to distribute in violation of 21 U.S.C. §§ 841, 846. As a matter of fact, both, Government counsel and the Magistrate Judge seem confused about the maximum penalty which under § 841 is life. ..."Not withstanding section 3583 of title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment."(21 U.S.C. § 841 (b)(1)(A). The following exchanges occurred during the COP hearing:

The Court: Counsel for the Government, can you please state for the record the maximum penalties for each count?

Mr. Henwood (Gov. Counsel): Yes, your Honor. It's -- it's a term of imprisonment of at least 10 years, but not more -- or, up to life imprisonment, --

The Court: Um hum?

Mr. Henwood: -- a supervised release term -- term of atleast five years, --

The Court: Um hum?

Mr. Henwood: -- and a fine -- let me read it here -- I have --

The Court: Not to exceed $10 million

Mr. Henwood: Not to exceed $10 million. That's correct. Thank you.

The Court: And did we state the term of supervised release?

Mr. Henwood: Yeah. Not to exceed five years.

The Court: Not to exceed five years. Okay.

By The Court: Q: Do you all understand that these are the maximum penalties provided by the statute?

A: Yes

A: Yes

A: Yes

The Magistrate Judge, accepting the guilty plea did not inform Appellant that he could be sentenced to a lifetime of Supervised Release. Instead, relying on government counsel's confused assertion, he erroneously stated that the maximum possible period of supervised release was five years.

Had Appellant known he was subject to a lifetime term of supervised release his decision to plead guilty might have been seriously compromised and reversed altogether, especially after the Magistrate Judge explained how supervised release worked:

By The Court: Q. All right. Supervised release is a term to be served after any term of imprisonment: you're done with any jail term, you're back in the free community with some conditions. And, if you violate any of those conditions, then you go back to jail for the _full_ term of supervised release.

Outweighing the consequences, the assurance that Appellant would not receive more than five years of supervised release, tipped the scale in helping to

17

make the decision to plead guilty. This constitutes an error (1) that is plain (2).

The Supreme Court explained in United States v. Benitez, 542 US 74, 83 (2004), that a rule 11 error affects substantial rights and therefore satisfies the third prong of the plain error test only when a defendant can show " a reasonable probability that, but for the error, he would not have entered the plea." Having established the first two prongs of plain error review, Appellant must next meet the Dominguez-Benitez standard of prejudice by showing that the error affected his substantial rights because there is a reasonable probability that he would not have entered the plea agreement but for the misstatement. Dominguez-Benitez, 542 US at 83. This Honorable Court faced a similar claim of prejudice in the Rule 11 context in United States v. Rivera-Maldonado, 560 F.3d 16, (1st Cir. 2009). There, defendant pled guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) after being informed in the plea colloquy that he was subject to a term of supervised release of no more than three (3) years, when in fact, the maximum period of supervised release applicable to the charged offense (as in instant case) life not three years. Therefore, Appellant requests the same relief which is to Vacate the judgment and order that Appellant be permitted to withdraw his guilty plea and allow him to plead anew. As this Honorable Court has said, "the defendant's knowledge of the consequences of his plea" is a core concern of Rule 11. United States v. Hernandez-Wilson, 186 F.3d 1, (1st. Cir. 1999).

## CONCLUSION

Wherefore, Appellant prays this Honorable Court grants relief request-
ed which calls for the conviction to be vacated and he be allowed to plead
anew. Furthermore, it is requested that this Honorable Court find Appellant's
counsel's brief meritless and frivolous and in violation of <u>Anders v. State
of California</u>, 386 US 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967).

If this Honorable Court were to find merit in Appellant's brief, but
find it insufficient as to argument authorities, Appellant therefore asks this
Honorable Court to appoint counsel so that he may submit a merits brief.
Further, Appellant requests if this Honorable Court were to find merit in
this brief, to consider a sanction of said counsel.

RESPECTFULLY SUBMITTED,

In Boston, Massachusetts, this 15th day of October, 2013.

Pedro Hernandez-Ubiera, Pro Se
Reg. No. 39420-069
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, Massachusetts 01432

CERTIFICATE OF SERVICE

I, Pedro Hernandez-Ubiera, herby certify that I have mailed a cover letter, and Appellant's Pro Se brief, by first class mail, on October 15, 2013 to:

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 2500
Boston, Massachusetts 02210
Case Manager: Adam Sparrow

Declared under the pains and penalties of perjury on October 15, 2013

Pedro Hernandez-Ubiera
Reg. No. 39420-069
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, Massachusetts 01432

OFFICE OF THE CLERK
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 2500
Boston, Massachusetts 02210

October 15, 2013

Re: United States v. Pedro Hernandez-Ubiera, Appeal No. 13-1403

Dear Clerk,

   Please find the enclosed Appellant's Pro Se brief, and a Certificate of
Service to be filed and docketed in Court. Thank you for your assistance.

Sincerely,

Pedro Hernandez-Ubiera
Reg. No. 39420-069
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, Massachusetts 01432



USMS
SCREENED

OFFICE OF THE CLERK
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
JOHN JOSEPH MOAKLEY
UNITED STATES COURTHOUSE
1 COURTHOUSE WAY, SUITE 2500
BOSTON, MASSACHUSETTS 02210
CASE MANAGER: ADAM SPARROW

PEDRO HERNANDEZ - UBIERA
REG. NO. 39420-069
FMC DEVENS
FEDERAL MEDICAL CENTER
P.O. BOX 879
AYER, MASSACHUSETTS 01432

Legal Mail